UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JOSEPH A SMITH,<br><br>          Plaintiff,<br><br>     v.<br><br>EQUINOX HOLDINGS, INC., et al.,<br><br>          Defendants. | Case No. 3:14-cv-00846-LB<br><br>**PROPOSED FINAL JURY INSTRUCTIONS** |

The attached are the court's proposed final jury instructions that will be discussed at the charge

conference on Wednesday, August 5, 2015.

Dated: August 5, 2015

_____

LAUREL BEELER
United States Magistrate Judge

**DUTY OF JURY**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case. A copy of these instructions will be sent with you to the jury room when you deliberate.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits which are received into evidence; and

3. any facts to which the lawyers have agreed.

**STIPULATIONS OF FACT**

The parties have agreed to certain facts that have been read to you. You should therefore treat these facts as having been proved.

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

United States District Court
Northern District of California

**EVIDENCE ADMITTED FOR LIMITED PURPOSE**

Certain evidence was admitted at trial for a limited purpose. In particular, the wage and hour class action litigation filed against Equinox was admitted for two purposes: (1) to show that a case had been filed against Equinox related to meal and rest breaks which pre-dated Joseph Smith's complaints about meal breaks; and (2) to show that Equinox employees, including Joseph Smith, were aware of the wage and hour class action. You may consider that evidence only for the limited purpose described, and not for any other purpose.

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

### DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The deposition of Tracey Gaven-Bridgman was taken on January 8, 2015 and the deposition of Brooke English was taken on January 19, 2015. You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person who read the questions or answers.

### IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

### EXPERT OPINION

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

### CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

### CHARTS AND SUMMARIES IN EVIDENCE

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

United States District Court
Northern District of California

1

## NONPERSON PARTY

Corporations Equinox Holdings, Inc., Equinox Fitness Union Street, Inc., and Equinox Pine Street, Inc. (collectively, "Equinox") are parties in this lawsuit. Equinox is entitled to the same fair and impartial treatment that you would give to an individual. You must decide this case with the same fairness that you would use if you were deciding the case between individuals.

When I use words like "person" or "he" or "she" in these instructions to refer to a party, those instructions also apply to Equinox.

## LIABILITY OF CORPORATIONS

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CASE OVERVIEW: CLAIMS AND DEFENSES

The following is an overview of the case.

California law requires that employees be paid overtime wages, receive meal and rest periods, and receive itemized wage statements unless an exemption applies. The plaintiff Joseph Smith claims that the defendant Equinox misclassified him as an exempt employee and then (1) did not pay him overtime when he worked more than 8 hours in a day or more than 40 hours in a week, (2) did not give him timely, off-duty meal and rest periods, (3) did not give him accurate, itemized wage statements, and (4) did not pay him all the wages that he was due when they terminated him. He also claims that Equinox terminated him in violation of public policy underlying California law and made defamatory statements about him after his termination.

Mr. Smith has the burden of proving these claims by a preponderance of the evidence.

Equinox denies these claims and also contends that Mr. Smith was an "exempt" employee and that it was not required to pay him overtime, provide meal and rest breaks, or provide an itemized wage statement.

Equinox has the burden of proving by a preponderance of the evidence its affirmative defense that Mr. Smith was an "exempt" employee.

## BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Proposed Final Jury Instructions (No. 3:14-cv-00846-LB)

6

**WAGE-AND-HOUR CLAIMS: EXEMPTION INTRODUCTION**

I will now instruct you about employee exemptions under California law. California law requires that employees be paid overtime wages, receive meal and rest periods, and receive itemized wage statements unless an exemption applies.

Equinox claims that it properly classified Joseph Smith as an exempt executive or administrative employee. Employees who qualify as exempt under the executive or administrative exemption are not entitled to overtime, meal and rest periods, or itemized wage statements. It is Equinox's burden to prove, by a preponderance of the evidence, that Joseph Smith was an exempt employee for every week during which he worked.

Exemptions are narrowly construed against the employer and their application is limited to those employees plainly and unmistakably within their terms.

Equinox contends that two exemptions applied to Joseph Smith: (1) the executive exemption; and (2) the administrative exemption. I will explain each of these exemptions to you now.

**WAGE-AND-HOUR CLAIMS: EXECUTIVE EXEMPTION**

Equinox claims that it is not required to pay Joseph Smith for overtime because Joseph Smith is an executive employee. It is Equinox's burden to prove by a preponderance of the evidence that Joseph Smith was an exempt employee for each and every week during which he worked. Joseph Smith is exempt from overtime pay requirements as an executive if Equinox proves all of the following:

1. Joseph Smith's duties and responsibilities involved management of Equinox's business or of a customarily recognized department or subdivision of the business;

2. Joseph Smith customarily and regularly directed the work of two or more employees;

3. Joseph Smith had the authority to hire or fire employees, or his suggestions as to hiring or firing and as to advancement and promotion or other changes in status were given particular weight;

4. Joseph Smith customarily and regularly exercised discretion and independent judgment;

5. Joseph Smith performed executive duties more than half of the time; and

6. Joseph Smith's monthly salary is at least twice the state minimum wage for full time employment.

The court already determined that Equinox has proven factors 1, 2, 3, and 6. You need only decide whether Equinox has proven factors 4 and 5 by a preponderance of the evidence.

With respect to factor 4, the exercise of "discretion and independent judgment" involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance. An employee who merely applies his knowledge in following prescribed procedures or determining which procedures to follow is not exercising discretion and independent judgment.

With respect to factor 5, in determining whether Joseph Smith "performed executive duties more than half of the time," the most important consideration is how he actually spent his time. But also consider whether Joseph Smith's practice differed from Equinox's realistic expectations of how Joseph Smith should have spent his time and the realistic requirements of the job.

While you may consider Joseph Smith's job title and job description, these are not determinative as to whether Joseph Smith meets the exemption requirements.

Each of Joseph Smith's activities is either an exempt or a nonexempt activity depending on the primary purpose for which he undertook it at that time. Time spent on an activity is either exempt or nonexempt, not both.

Exempt tasks include but are not limited to:

1.  Interviewing and selecting employees.

2.  Coaching and training employees.

3.  Scheduling shifts for employees.

4.  Directing the work of employees.

5.  Supervising the work of employees.

6.  Ensuring that employees adhere to loss prevention and inventory management policies.

7.  Ensuring that employees timely and accurately complete all assigned operational tasks.

8.  Handling employees' complaints and grievances and disciplining them when necessary.

9.  Administer Shop Visit Audits, both formal and informal.

Non-exempt tasks include but are not limited to:

1.  Ringing up sales for customers.

2.  Cashiering.

3.  Assisting customers with routine matters (for example, finding an item in the store).

4.  Putting up and taking down merchandise displays and decorations.

5.  Dressing mannequins.

6.  Cleaning.

7.  Fetching items for customers.

8.  Unloading trucks and unpacking merchandise.

9.  Labeling shelves, completing signage including shelf and price tags.

10. Maintaining the back room.

In making your decision, you may consider whether the manager is doing work of the same nature as work routinely done by hourly paid employees.

Proposed Final Jury Instructions (No. 3:14-cv-00846-LB)

United States District Court
Northern District of California

8

**WAGE-AND-HOUR CLAIMS: ADMINISTRATIVE EXEMPTION**

Equinox claims that it is not required to pay Joseph Smith for overtime because Joseph Smith is an administrative employee. It is Equinox's burden to prove by a preponderance of the evidence that Joseph Smith was an exempt employee for each and every week during which he worked. Joseph Smith is exempt from overtime pay requirements as an administrator if Equinox proves all of the following:

1. Joseph Smith's duties and responsibilities involve the performance of office or nonmanual work directly related to management policies or general business operations of Equinox or Equinox's customers;

2. Joseph Smith customarily and regularly exercises discretion and independent judgment;

3. Joseph Smith performs, under general supervision only, specialized or technical work that requires special training, experience, or knowledge;

4. Joseph Smith performs administrative duties more than half of the time; and

5. Joseph Smith's monthly salary is at least twice the state minimum wage for full time employment.

It is undisputed that Equinox has proven factor 5. You must decide whether Equinox has proven the other factors by a preponderance of the evidence.

With respect to factor 1, the phrase "directly related to management policies or general business operations of his employer or his employer's customers" describes those types of activities relating to the administrative operations of a business as distinguished from "production" or, in a retail or service establishment, "sales" work. Additionally, the employee must have performed work of substantial importance to the management or operation of the business of his employer or his employer's customers. The administrative operations of the business include the work performed by employees engaged in "servicing" a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control.

With respect to factor 2, the exercise of "discretion and independent judgment" involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance. An employee who merely applies his knowledge in following prescribed procedures or determining which procedures to follow is not exercising discretion and independent judgment.

With respect to factor 4, in determining whether Joseph Smith "performs administrative duties more than half of the time," the most important consideration is how he actually spends his time. But also consider whether Joseph Smith's practice differs from Equinox's realistic expectations of how Joseph Smith should spend his time and the realistic requirements of the job.

While you may consider Joseph Smith's job title and job description, these are not determinative as to whether Joseph Smith meets the exemption requirements.

Each of Joseph Smith's activities is either an exempt or a nonexempt activity depending on the primary purpose for which he undertook it at that time. Time spent on an activity is either exempt or nonexempt, not both.

United States District Court
Northern District of California

Exempt tasks include but are not limited to:

1. Advising management.

2. Implementing company policies and procedures.

3. Training on policies and procedures.

4. Analyzing data.

5. Supervision and control of a flow of merchandise to the sales floor.

Non-exempt tasks include but are not limited to:

1. Routine sales work.

2. Routine clerical work.

3. Bookkeeping.

4. Office work.

5. Tabulating data.

6. Replenishing the stocks of merchandise on the sales floor.

**EXECUTIVE AND ADMINISTRATIVE TIME MAY BE COMBINED**

For the purpose of determining whether Joseph Smith spent more than 50% of his time performing exempt tasks, you may consider both administrative and managerial duties together. For example, if you find that 30% of Joseph Smith's time was spent on fully-qualified exempt executive duties and that Joseph Smith spent a different 30% of his time on fully-qualified exempt administrative duties, then you may combine the two to find that Joseph Smith spent over 50% of his time on exempt duties. This would satisfy the "primarily engaged" requirement for both the executive and administrative exemptions.

## JOSEPH SMITH'S WAGE-AND-HOUR CLAIMS—INTRODUCTION

If you find that Equinox failed to prove by a preponderance of the evidence that Joseph Smith was an exempt employee, you must turn to Joseph Smith's claims that Equinox (1) did not pay overtime when he worked more than 8 hours in a day or more than 40 hours in a week, (2) did not give him timely, off-duty meal and rest periods, (3) did not give him accurate, itemized wage statements, and (4) did not pay him all wages due upon termination. Mr. Smith must prove his claims by a preponderance of the evidence.

Mr. Smith's other two claims − that Equinox terminated him in violation of public policy underlying California law and made defamatory statements about him after his termination − do not depend on finding that Equinox improperly classified him as an exempt employee. You must address whether Mr. Smith proved these claims whether or not you that find Equinox properly classified Mr. Smith as exempt. I will instruct you about the wrongful termination and defamation claims at the end of these instructions.

## NONPAYMENT OF OVERTIME COMPENSATION CLAIM—ESSENTIAL FACTUAL ELEMENTS

Joseph Smith claims that Equinox owes him overtime pay as required by state law. To establish this claim, Mr. Smith must prove all of the following:

1.  That he performed work for Equinox;

2.  That he worked overtime hours;

3.  That he was not paid or was paid less than the overtime rate for some or all of the overtime hours worked; and

4.  The amount of overtime pay owed.

Overtime hours are the hours worked longer than 8 hours per day and/or 40 hours per week.

Overtime pay is 1.5 times the employee's regular rate of pay for all hours worked in excess of 8 hours up to and including 12 hours in any workday, and 2.0 times the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday.

An employee is entitled to be paid the legal overtime pay rate even if he or she agrees to work for a lower rate.

## PROOF OF OVERTIME HOURS WORKED

State law requires California employers to keep payroll records showing the hours worked by and wages paid to employees.

If Equinox did not keep accurate records of the hours worked by Joseph Smith, then Mr. Smith may prove the number of overtime hours worked by making a reasonable estimate of those hours.

In determining the amount of overtime hours worked, you may consider Joseph Smith's estimate of the number of overtime hours worked and any evidence presented by Equinox that Mr. Smith's estimate is unreasonable.

## CALCULATION OF OVERTIME

If you determine that Joseph Smith is entitled to overtime pay, you must calculate the amount of overtime pay that he is owed.

Joseph Smith's regular hourly rate is determined by dividing his total weekly compensation by 40 hours.

Joseph Smith's overtime pay is 1.5 times his regular rate of pay for all hours worked in excess of 8 hours up to and including 12 hours in any workday, and 2.0 times his regular rate of pay for all hours worked in excess of 12 hours in any workday.

**MEAL PERIOD CLAIM**

Equinox had an obligation to provide non-exempt employees with a duty-free meal period of at least 30 minutes no later than the end of every 5-hour work period and a second duty-free meal period of at least 30 minutes no later than the end of every 10-hour work period. If the total hours worked are no more than 6 hours, the first meal break may be waived by mutual consent of the employer and employee. If the total hours worked are no more than 12 hours, the second meal period may be waived by the mutual consent of the employer and employee only if the first meal period was not waived.

To establish this claim, Joseph Smith must prove all of the following for each work day:

1.  That he worked for Equinox;

2.  That Equinox did not provide him with the ability to take a duty-free 30-minute meal period by the end of each 5-hour work period;

3.  If the work period was not more than 6 hours, that he and Equinox did not waive the meal period by mutual consent;

4.  If the work period was not more than 12 hours, and he took an off-duty 30-minute meal period no later than the end of the first 5-hour work period, that he and Equinox did not waive the second meal period by mutual consent.

An employer satisfies its obligation to provide a meal period if it relieves its employees of all duties, relinquishes control over their activities and provides them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so.


**COMPENSATION FOR MISSED MEAL PERIOD**

If an employer fails to provide a non-exempt employee a meal period, the employer shall pay the non-exempt employee 1 hour of pay at the non-exempt employee's regular rate of compensation for each workday that the meal period is not provided.

United States District Court
Northern District of California

**REST PERIOD CLAIM**

Equinox had an obligation to provide non-exempt employees with a duty-free rest period of at least (1) 10 minutes for shifts that are at least three and one-half to six hours, (2) 20 minutes for shifts of more than six hours up to 10 hours, (3) 30 minutes for shifts of more than 10 hours up to 14 hours, and (4) 40 minutes for shifts of 14 hours to 18 hours.

To establish this claim, Joseph Smith must prove all of the following for each work day:

1. He worked for Equinox;

2. Equinox did not provide him with the ability to take a duty-free rest period during a work shift; and

3. The length of the shift.

An employer satisfies its obligation to provide a rest period if it relieves its employees of all duties, relinquishes control over their activities and provides them a reasonable opportunity to take an uninterrupted 10-minute break, and does not impede or discourage them from doing so.

**COMPENSATION FOR MISSED REST PERIOD**

If an employer fails to provide a non-exempt employee a rest period, the employer shall pay the non-exempt employee 1 hour of pay at the non-exempt employee's regular rate of compensation for each work day that the rest period is not provided.

United States District Court
Northern District of California

Proposed Final Jury Instructions (No. 3:14-cv-00846-LB)

14

**ACCURATE ITEMIZED WAGE STATEMENT CLAIM**

Equinox had an obligation to provide non-exempt employees (semimonthly or at the time of each payment of wages) an accurate itemized statement in writing (either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash) showing:

1.   gross wages earned;

2.  total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime;

3.  all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item;

4.  net wages earned;

5.  the inclusive dates of the period for which the employee is paid;

6.  the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number;

7.  the name and address of the legal entity that is the employer; and

8.  all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

Joseph Smith claims that Equinox knowingly and intentionally filed to furnish him with accurate itemized statements. To establish this claim, Joseph Smith must prove all of the following:

1.  He worked for Equinox;

2.  Equinox knowingly and intentionally failed to furnish to him with accurate itemized wage statements; and

3.  The number of pay periods in which Equinox failed to furnish him with accurate itemized wage statements.

**COMPENSATION FOR FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENT**

An employee suffering injury as a result of a knowing and intentional failure by an employer to provide an accurate itemized wage statement is entitled to recover the greater of all actual damages or $50 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of $4,000.

United States District Court
Northern District of California

### PAYMENT OF ALL WAGES UPON TERMINATION CLAIM

If an employer terminates an employee, it must pay the employee all earned and unpaid wages immediately upon the employee's termination. If you decide that Joseph Smith proved his claim against Equinox for unpaid wages, then he may be entitled to receive an award of a civil penalty based on the number of days Equinox failed to pay his wages when due.

To recover the civil penalty, Joseph Smith must prove all of the following:

1.  The date on which his employment ended;

2.  Equinox failed to pay all wages due by the date his employment ended;

3.  His daily wage rate at the time his employment ended; and

4.  Equinox willfully failed to pay these wages.

The term "wages" includes all amounts for labor performed by an employee, whether the amount is calculated by time, task, piece, commission, or some other method.

The term "willfully" means that the employer intentionally failed or refused to pay the wages.

**WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY CLAIM—
ESSENTIAL FACTUAL ELEMENTS**

Joseph Smith claims he was discharged from employment for reasons that violate a public policy. It is a violation of public policy to discharge someone from employment for complaining about an employer's failure to properly pay employees and provide meal and rest periods.

To establish this claim, Joseph Smith must prove all of the following:

1.  That he was employed by Equinox;

2.  That Equinox discharged him;

3.  That his complaining about Equinox's failure to properly pay employees and provide meal and rest periods was a substantial motivating reason for his discharge; and

4.  That the discharge caused him harm.

A "substantial motivating reason" is a reason that actually contributed to the discharge. It must be more than a remote or trivial reason. It does not have to be the only reason motivating the discharge.

**WRONGFUL DISCHARGE CLAIM: BUSINESS JUDGMENT**

In California, employment is presumed to be "at will."  That means that an employer may discharge an employee for no reason, or for a good, bad, mistaken, unwise, or even unfair reason, as long as its action is not for a retaliatory reason.

**WRONGFUL DISCHARGE CLAIM: LIMITATION ON REMEDIES—SAME DECISION**

Joseph Smith claims that he was discharged because he protested Equinox's failure to properly pay employees and provide meal and rest periods. Equinox claims that Joseph Smith was discharged because he violated Equinox's policies and procedures and improperly authorized discounts of store merchandise, which is a lawful reason.

If you find that retaliation was a substantial motivating reason for Joseph Smith's discharge, you must then consider Equinox's stated reason for the discharge.

If you find that Equinox's stated reason was also a substantial motivating reason for Joseph Smith's discharge, then you must determine whether Equinox has proven that it would have discharged Joseph Smith anyway based on his violation of Equinox's policies and procedures even if it had not also been substantially motivated by retaliation.

In determining whether Joseph Smith's violation of Equinox's policies and procedures and was a substantial motivating reason, determine what actually motivated Equinox, not what it might have been justified in doing.

If you find that Equinox discharged Joseph Smith only for a retaliatory reason, you will be asked to determine the amount of damages that he is entitled to recover. If, however, you find that Equinox would have discharged Joseph Smith anyway for violating Equinox's policies and procedures, then Joseph Smith will not be entitled to reinstatement, back pay, or damages.

**WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY—DAMAGES**

If you find that Equinox discharged Joseph Smith in violation of public policy, then you must decide the amount of damages that Joseph Smith has proven he is entitled to recover, if any. To make that decision, you must:

1. Decide the amount that Joseph Smith would have earned up to today, including any benefits and pay increases;

2. Add the present cash value of any future wages and benefits that he would have earned for the length of time the employment with Equinox was reasonably certain to continue; and

3. Add damages for emotional distress if you find that Equinox's conduct was a substantial factor in causing that harm.

In determining the period that Joseph Smith's employment was reasonably certain to have continued, you should consider such things as:

(a) Joseph Smith's age, work performance, and intent regarding continuing employment with Equinox;

(b) Equinox's prospects for continuing the operations involving Joseph Smith; and

(c) Any other factor that bears on how long Joseph Smith would have continued to work.

**WRONGFUL DISCHARGE: EMPLOYEE'S DUTY TO MITIGATE DAMAGES**

Equinox claims that if Joseph Smith is entitled to any damages, they should be reduced by the amount that he could have earned from other employment. To succeed, Equinox must prove all of the following:

1. That employment substantially similar to Joseph Smith's former job was available to him;

2. That Joseph Smith failed to make reasonable efforts to seek and retain this employment; and

3. The amount that Joseph Smith could have earned from this employment.

In deciding whether the employment was substantially similar, you should consider, among other factors, whether:

(a) The nature of the work was different from Joseph Smith's employment with Equinox;

(b) The new position was substantially inferior to Joseph Smith's former position;

(c) The salary, benefits, and hours of the job were similar to Joseph Smith's former job;

(d) The new position required similar skills, background, and experience;

(e) The job responsibilities were similar; and

(f) The job was in the same locality;

In deciding whether Joseph Smith failed to make reasonable efforts to retain comparable employment, you should consider whether he quit or was discharged from that employment for a reason within his control.

United States District Court
Northern District of California

Proposed Final Jury Instructions (No. 3:14-cv-00846-LB)

18

**WRONGFUL TERMINATION—PUNITIVE DAMAGES—ENTITY DEFENDANT**

If you decide that Equinox's conduct caused Joseph Smith harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Equinox only if Joseph Smith proves that Equinox engaged in that conduct with malice, oppression, or fraud. To do this, Joseph Smith must prove one of the following by clear and convincing evidence:

1. That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Equinox, who acted on behalf of Equinox; or

2. That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Equinox; or

3. That one or more officers, directors, or managing agents of Equinox knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that Equinox acted with intent to cause injury or that Equinox's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that Equinox's conduct was despicable and subjected Joseph Smith to cruel and unjust hardship in knowing disregard of his rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that Equinox intentionally misrepresented or concealed a material fact and did so intending to harm Joseph Smith.

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decisionmaking such that his or her decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a) How reprehensible was Equinox's conduct? In deciding how reprehensible Equinox's conduct was, you may consider, among other factors:

(1) Whether the conduct caused physical harm;

(2) Whether Equinox disregarded the health or safety of others;

(3) Whether Joseph Smith was financially weak or vulnerable and Equinox knew Joseph Smith was financially weak or vulnerable and took advantage of him;

(4) Whether Equinox's conduct involved a pattern or practice; and

(5) Whether Equinox acted with trickery or deceit.

1

2

3

    (b) Is there a reasonable relationship between the amount of punitive damages and Joseph Smith's harm or between the amount of punitive damages and potential harm to Joseph Smith that Equinox knew was likely to occur because of its conduct?

    (c) In view of Equinox's financial condition, what amount is necessary to punish it and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because Equinox has substantial financial resources. Any award you impose may not exceed Equinox's ability to pay.

    Punitive damages may not be used to punish Equinox for the impact of its alleged misconduct on persons other than Joseph Smith.

United States District Court
Northern District of California

Proposed Final Jury Instructions (No. 3:14-cv-00846-LB)

**DEFAMATION PER SE CLAIM**

Joseph Smith claims that Equinox harmed him by making one or more of the following statements: that Joseph Smith was terminated for "integrity reasons." To establish this claim, Joseph Smith must prove all of the following:

1. That Equinox made the statements to persons other than Joseph Smith;
2. That these people reasonably understood that the statements were about Joseph Smith;
3. That these people reasonably understood the statements to mean that Joseph Smith was terminated for integrity reasons;
4. That Equinox failed to use reasonable care to determine the truth or falsity of the statements.

The word "statement" in these instructions refers to any form of communication or representation, including spoken or written words or pictures.

**DEFAMATION: FACT VERSUS OPINION**

For Joseph Smith to recover, Equinox's statements must have been statements of fact, not opinion. A statement of fact is one that can be proved to be true or false. In some circumstances, Joseph Smith may recover if a statement phrased as an opinion implies that a false statement of fact is true.

In deciding this issue, you should consider whether the average listener would conclude from the language of the statement and its context that Equinox was implying that a false statement of fact is true.

**AFFIRMATIVE DEFENSE TO DEFAMATION—TRUTH**

Equinox is not responsible for Joseph Smith's harm, if any, if Equinox proves that the statement about Joseph Smith was true. Equinox does not have to prove that the statement was true in every detail, so long as the statement was substantially true.

**QUALIFIED PRIVILEGE FOR DEFAMATION**

Joseph Smith cannot require damages from Equinox, even if the statements were false, unless he proves either:

1. That in making the statements, Equinox acted with hatred or ill will toward him, showing its willingness to vex, annoy, or injure him; or

2. Equinox had no reasonable grounds for believing the truth of the statements.

United States District Court
Northern District of California

**DAMAGES FOR DEFAMATION PER SE**

*Actual Damages*

If Joseph Smith has proved the four liability factors in the "Defamation Per Se Claim" instruction above and that the statement was not protected by the qualified privilege, and if Equinox has not proved that the statement about Joseph Smith was substantially true, then he is entitled to recover his actual damages if he proves that Equinox's wrongful conduct was a substantial factor in causing any of the following:

    a.  Harm to Joseph Smith's property, business, trade, profession, or occupation;

    b.  Expenses Joseph Smith had to pay as a result of the defamatory statements;

    c.  Harm to Joseph Smith's reputation; or

    d.  Shame, mortification, or hurt feelings.

*Assumed Damages*

Even if Joseph Smith has not proved any actual damages for harm to reputation or shame, mortification, or hurt feelings, the law assumes that he has suffered this harm. Without presenting evidence of damage, Joseph Smith is entitled to receive compensation for this assumed harm in whatever sum you believe is reasonable. You must award at least a nominal sum, such as one dollar.

*Punitive Damages*

Joseph Smith may also recover damages to punish Equinox if he proves by clear and convincing evidence that Equinox acted with malice, oppression, or fraud.

United States District Court
Northern District of California

Proposed Final Jury Instructions (No. 3:14-cv-00846-LB)

22

1

**OTHER GENERAL JURY INSTRUCTIONS ON DAMAGES**

2

**DAMAGES—PROOF**

3

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

4

5

If you find for Joseph Smith, you must determine his damages. Joseph Smith has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. You should consider the following:

6

7

The amount of unpaid overtime compensation, compensation for missed meal periods and compensation for missed rest periods;

8

The reasonable value of wages, earnings, earning capacity, salaries, employment, and employment opportunities lost to the present time;

9

10

The reasonable value of wages, earnings, earning capacity, salaries, employment, and employment opportunities which with reasonable probability will be lost in the future; and

11

12

The mental, physical, emotional pain and suffering experienced and which with reasonable probability will be experienced in the future.

13

It is for you to determine what damages, if any, have been proved.

14

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

15

16

**DAMAGES ARISING IN THE FUTURE—DISCOUNT TO PRESENT CASH VALUE**

17

Any award for future economic damages must be for the present cash value of those damages.

18

Noneconomic damages such as pain and suffering are not reduced to present cash value.

19

Present cash value means the sum of money needed now, which, when invested at a reasonable rate of return, will pay future damages at the times and in the amounts that you find the damages will be incurred or would have been received.

20

21

The rate of return to be applied in determining present cash value should be the interest that can reasonably be expected from safe investments that can be made by a person of ordinary prudence, who has ordinary financial experience and skill.

22

23

24

25

26

27

28

Proposed Final Jury Instructions (No. 3:14-cv-00846-LB)

United States District Court
Northern District of California

**DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any Internet chat room, blog, website or other feature. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address. A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the court clerk, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the

United States District Court
Northern District of California

jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

## RETURN OF VERDICT

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.